## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | |
|---|---|
| K.J. <br> as Next Friend for K.D., a minor, <br><br> Plaintiff, <br><br> v. <br><br> ST. JOSEPH SCHOOL DISTRICT, et al., <br><br> Defendants. | Case No. 18-6113-CV-SJ-SRB |

## ORDER

Before the Court is Defendants' Joint Motion for Judgment on the Pleadings. (Doc. #28). For the reasons discussed below, the Motion is GRANTED IN PART and DENIED IN PART.

### I.  Background

Plaintiffs K.J., individually and as Next Friend for K.D., a minor[1], bring this action against Defendants St. Joseph School District ("SJSD") and Kim Siela, individually and as a Principal for SJSD[2] for: (1) school district liability under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act; (2) retaliation; (3) negligence/breach of ministerial duties; (4) vicarious liability (respondeat superior); (5) violation of the ADA and Rehabilitation Act;

---

[1] While the case caption refers to K.J. only as "Next Friend," the operative complaint, entitled "1st Amended Petition for Damages," ("Amended Complaint") states that K.J. brings this suit "individually and as Next Friend for the minor, K.D." (Doc. #15, ¶ 1). Further, the Amended Complaint at times describes "plaintiffs" as plural and "plaintiff" as a singular entity. The Court will refer to "Plaintiffs" in plural form—referring to K.J. as an individual and K.J. as Next Friend to K.D.

[2] It is unclear whether Plaintiffs assert claims against Michael Otto. Defendants argue Plaintiffs abandoned their claims against Otto in the Amended Complaint. The Court will address this issue below.

(6) sexual harassment under Title IX; and (7)[3] violation of 42 U.S.C. § 1983. In support of these claims, Plaintiffs allege the following facts, which are treated as true for the purposes of this Motion.

K.D. transferred to the SJSD during the 2012-13 school year, at which time he attended third grade at Bessie Ellison Elementary School. Beginning in 2012, K.D. was subjected to bullying and harassment by his peers, and no effective measures were taken to protect K.D. K.D.'s physician placed K.D. on a steroidal medication to treat stomach issues that resulted from anxiety caused by the persistent bullying. K.D. had an allergic reaction to the medication, which caused him to exhibit atypical behaviors.

On one such occasion, K.D. ran out of the school. K.D.'s parents went to the school to speak with K.D., but K.D. did not appear to understand his parents. Subsequently, K.J. called K.D.'s doctor, who advised K.J. that "it sounded as if he was having a reaction to the medication and [] advised to stop its use immediately." (Doc. #15, ¶ 13). The doctor's office also notified the school of K.D.'s medical issue. Even so, the principal[4] called the police and demanded K.D. be arrested. A sheriff deputy went to the school and "issued a citation for the family to see a juvenile officer for K.D. being 'ungovernable.'" (Doc. #15, ¶ 15). K.D.'s parents took K.D. for medical treatment and were told that "K.D. needed to be treated as if he were having a seizure if the psychosis recurred by making sure he was safe and not going to hurt himself." (Doc. #15, ¶ 16). K.J. provided this information to SJSD with documentation, and SJSD responded that "doctors could not dictate how a school is run." (Doc. #15, ¶ 18).

---

[3] Plaintiffs incorrectly identify claim (7), violation of 42 U.S.C. § 1983, as a second claim (6) in their Amended Complaint. The Court will identify this claim as claim (7).
[4] Presumably, "the principal" refers to Defendant Kim Siela, although Plaintiffs never explicitly refer to the principal by name in the "Facts Common to All Counts" section of the Amended Complaint.

On another occasion, after suffering a severe reaction to anxiety, K.J. stayed with K.D. for a half hour at the school, which did not help K.D.'s anxiety subside, so K.J. took K.D. home. The next day, K.J. took K.D. to school and K.J. "was told it was best if she left." (Doc. #15, ¶ 22). The principal "restrained" K.D. and told K.J. to leave. K.J. left to work and called the school secretary three times. During the time K.J. was attempting to communicate with the secretary to check on K.D., the principal restrained K.D., called the police, and had K.D. handcuffed and taken to the Juvenile Detention Center. The principal called K.J. to tell her K.D. had been arrested. Several months later, K.D. told his parents that on that day, three people held K.D. down—one held his arms, one laid across his stomach, and one laid across his legs—for forty minutes before he was handcuffed and taken to the Juvenile Detention Center.

Thereafter, K.D.'s anxiety worsened and he was placed in homebound schooling. K.D.'s parents attempted to "get him back into the regular school setting" various times, "[h]owever, every attempt . . . was thwarted by the principal at the school." (Doc. #15, ¶ 29). K.D. was diagnosed with Post Traumatic Stress Disorder ("PTSD") as a result of the trauma he experienced at the school. K.D. continued in homebound schooling, and SJSD instructed the tutor to call the police if K.D. had "problems," despite "actual knowledge that this course of action would exacerbate" K.D.'s anxiety and PTSD and "prevent him from returning to a regular school." (Doc. #15, ¶ 33).

K.D. was placed at a new school, Oak Grove Elementary for the 2014-15 school year. K.J. spoke with the principal at Oak Grove, Michael Otto, about K.D.'s medical and emotional issues, and related experiences at Bessie Ellison. K.J. became concerned about Otto's behavior toward K.D. when, at a school carnival, "Otto bid on a fishing basket and K.D. understood it was going to be for [K.D. and Otto] to go fishing." (Doc. #15, ¶ 37). Upon questioning, K.J. learned

that Otto had taken K.D. on a trip to a store and to eat, and had bought him gifts. K.D. told his parents that Otto also rubbed K.D.'s shoulders and patted and hugged him. Subsequently, K.D. was not allowed to attend a field trip. K.D. told K.J. he did not know why he was not allowed to go, but that "he moved away from Mr. Otto when he touched [his] shoulders." (Doc. #15, ¶ 39). On a different occasion, Otto "threatened to call the police and have K.D. removed from the school because he believed K.D. was escalating" after K.D. had "shrugged when he was leaving the office when Otto reached out to touch him." (Doc. #15, ¶ 40).

K.J. reported Otto's conduct to SJSD. Otto did not allow K.D. back at school following the report. Otto instead "made a report regarding K.D. that did not comport with the facts and made it part of K.D.'s file." (Doc. #15, ¶ 41). Subsequently, K.D. returned to homebound services for the remainder of the 2014-15 school year. In 2015, K.D. was ordered transferred and began school at the Mid-Buchanan School District ("MBSD"), where he was successful. In 2017, MBSD told K.D.'s parents they would have to pay tuition or K.D. would be required to return to SJSD. In January 2018, K.D.'s anxiety became overwhelming, and he returned to homebound services. Defendants now jointly move for judgment on the pleadings on portions of Plaintiffs' claims.

## II.     Legal Standard

The Court applies the same standard on a motion for judgment on the pleadings as in a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990) ("[W]e review this 12(c) motion under the standard that governs 12(b)(6) motions."). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Ash v. Anderson Merchs., LLC*, No. 14–3258, 2015 WL 4978701, at *1 (8th Cir. 2015). The court "must take all factual allegations [made by the plaintiff] as true when considering a motion to dismiss." *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007); *Data Mfg., Inc. v. United Parcel Service, Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable").

However, factual allegations which represent "legal conclusions or formulaic recitation of the elements of a cause of action . . . may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677 (2009)) (internal citations omitted). The pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). The "evaluation of a complaint upon a motion to dismiss is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden*, 588 F.3d at 594 (internal citations omitted). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594; *see also Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (noting the court's task "is to review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation").

### III. Discussion

#### A. Claims Against Michael Otto

Defendants argue that in Plaintiffs' Petition for Damages ("Original Complaint"), Plaintiffs asserted two claims against Michael Otto, including Count 2 for retaliation and Count 3 for negligence, but have since abandoned their claims against Otto. Defendants correctly note that Otto is not listed under the "Parties" section of Plaintiffs' currently operative Amended Complaint (Doc. #15), nor is Otto identified under any of the seven counts set forth in the Amended Complaint. Accordingly, Defendants argue Michael Otto should be formally dismissed from this action. Plaintiffs state they have not abandoned their claims against Otto, arguing that "when one views the [Amended Complaint] as a whole, it is clear that Mr. Otto is continuing as a defendant in the matter." In support of this contention, Plaintiffs point to the statements made in the "Facts Common to All Counts" section of the Amended Complaint, as well as the allegations set forth in Counts 2 and 3. Plaintiffs urge the Court to look past the "technical pleading irregularities" and find that Plaintiffs did not intend to abandon their claims against Otto. (Doc. #34, p. 9).

The Court finds the numerous irregularities within the Amended Complaint and the frequent inconsistencies between the Original Complaint and Amended Complaint are not properly characterized as mere "technical pleading irregularities." Rather, such errors defeat the very purpose of notice pleading, which is to give defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (internal quotation marks omitted) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)). Contrary to Plaintiffs' position, it is at best unclear whether Otto remains a defendant in this action. Plaintiffs' omission of Otto's name from the "Parties" section

of the Amended Complaint, particularly considering the inclusion of Otto's name as a party in the Original Complaint, suggests that Plaintiffs do not intend to include Otto as a party to this action. Similarly, Plaintiffs' omission of Otto's name under the counts set forth in the Amended Complaint, particularly considering the inclusion of Otto's name under Count 2 and Count 3 in the Original Complaint, suggests that Plaintiffs do not intend to include Otto as a party to this action. The Court also notes that Plaintiffs identify specific Defendants under certain counts in the Amended Complaint, but name no specific Defendants under other counts.

Accordingly, Plaintiffs have failed to meet the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure by failing to provide fair notice regarding (1) which parties Plaintiffs consider to be defendants to this suit and (2) which claims are being asserted against each party. Considering the relatively substantial amount of time remaining before the discovery deadline and trial in this case, the Court finds that all parties would benefit from a second amended complaint that provides proper notice to Defendants. Plaintiffs' counsel should diligently examine the law, the facts, and the parties to ensure only proper claims are being asserted in this Court. Therefore, Plaintiffs are ordered to file a second amended complaint that resolves the deficiencies discussed above by 5:00 p.m. on January 23, 2019.

### A. Claims Under The Americans with Disabilities Act and Rehabilitation Act

#### 1. Exhaustion of Administrative Process Under the Individuals with Disabilities Education Act ("IDEA")

Under *Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 746–48 (2017), when a plaintiff seeks relief for the denial of the Individuals with Disabilities Education Act's fundamental guarantee of a free appropriate public education ("FAPE"), a plaintiff must first exhaust the IDEA's administrative procedures before bringing suit in court under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, or similar laws. *See also Nelson v. Charles City Cmty. Sch.*

*Dist.*, 900 F.3d 587, 592 (8th Cir. 2018). "But if the remedy sought in a suit brought under a different statute is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." *Fry,* 137 S.Ct. at 747; 20 U.S.C. § 1415(l).

To determine whether a plaintiff seeks relief for the denial of a FAPE or seeks other relief, the Court must examine the "gravamen of the plaintiff's complaint, setting aside any attempts at artful pleading." *Fry*, 137 S.Ct. at 747. Further, "a court should attend to the diverse means and ends of the statutes covering persons with disabilities." *Id.* The Court in *Fry* acknowledged that the IDEA is not the only federal statute that protects the interests of children with disabilities. *Id.* at 749. In particular, Title II of the ADA "forbids any 'public entity' from discriminating based on disability," and § 504 of the Rehabilitation Act "applies the same prohibition to any federally funded 'program or activity.'" *Id.*; 42 U.S.C. §§ 12131–12132; 29 U.S.C. § 794(a). The Eighth Circuit has acknowledged:

> The IDEA, of course, protects only "children" . . . and concerns only their schooling. . . . [T]he statute's goal is to provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her unique needs. . . . By contrast, Title II of the ADA and § 504 of the Rehabilitation Act cover people with disabilities of all ages, and do so both inside and outside schools. And those statutes aim to root out disability-based discrimination, enabling each covered person (sometimes by means of reasonable accommodations) to participate equally to all others in public facilities and federally funded programs.

*J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 948 (8th Cir. 2017) (internal citations and quotations omitted).

Defendants argue that "Plaintiffs failed to exhaust administrative requirements required for her ADA [and Rehabilitation Act] claims in Counts 1, 2, and 5." (Doc. #29, p. 4). Defendants contend that "[i]n seeking relief related to an alleged denial of [a] FAPE in each of these separate Counts, [Plaintiffs were] required to follow and exhaust the IDEA administrative

8

process before bringing those claims in a civil action," and that because Plaintiffs have not done so, Counts 1, 2, and 5 should be dismissed. (Doc. #28, ¶¶ 9, 10). Plaintiffs contend that they do not seek relief for the denial of a FAPE; rather, Plaintiffs seek "remuneration for the discrimination, bullying, hazing, sexual assaults, retaliation and loss of access to a place of public accommodation." (Doc. #34, p. 13). Plaintiffs assert that they also seek "damages for being singled out on the basis of [K.D.'s] disability, publicly humiliated, unlawfully restrained and denigrated as a result of it." *Id.* Plaintiffs argue that their acknowledgement "that the invidious harassment and discrimination did impact [K.D.'s] ability to receive an education safe from bullying" demonstrate that K.D. was "unable to access a place of public accommodation and was the victim of invidious discrimination." (Doc. #34, p. 14). Further, Plaintiffs argue that such assertions are required to plead a cause of action under Title IX.

The Court finds that under Counts 1, 2, and 5—Plaintiffs' claims under the ADA and Rehabilitation Act—Plaintiffs seek relief for the denial of a FAPE, and also seek relief for discrimination based on disability. Plaintiffs allege the school district "encouraged, caused, ratified and/or aided and abetted the harassment and assault of [P]laintiff," "had actual knowledge of harassment, grooming and retaliation against Plaintiff," and that "the school district was deliberately indifferent to the harassment, bullying and retaliation." (Doc. #15, ¶¶ 49–51). Plaintiffs go on to allege that "*[t]hese acts deprived Plaintiff of access to the educational benefits or opportunities provided by the school* and full and equal use of the public accommodations," and that "[t]he harassment had the systematic effect of *depriving plaintiff of access to educational benefits or opportunities* and use of a public accommodation." (Doc. #15, ¶¶ 53, 57, 122) (emphasis added). Further, Plaintiffs claim that "*Defendant[s] . . . were obligated to provide Plaintiff [] with a suitable education* and allow him access to the public

9

accommodations in the manner as the other children within their custody and control." (Doc. #15, ¶ 64) (emphasis added). Plaintiffs claim that "[a]s a direct and proximate result of [D]efendant's wrongful conduct, *[P]laintiff has suffered and continues to suffer the loss of educational benefits and advantages and has incurred substantial expense to pursue other avenues of educational achievement.*" (Doc. #15, ¶¶ 68, 79, 131) (emphasis added).

The emphasized portions of Plaintiffs' Amended Complaint, taken in conjunction with the "Facts Common to all Counts" as alleged by Plaintiffs and as set forth by the Court above, demonstrate that Plaintiffs seek relief for the denial of the IDEA's guarantee of a FAPE. *See J.M.*, 850 F.3d at 949 (holding plaintiff's complaint that school district "denied [plaintiff] the benefits of public education" constituted a claim for the denial of a FAPE); *Smith v. Rockwood R-VI Sch. Dist.*, 895 F.3d 566, 569 (8th Cir. 2018) (holding plaintiff's allegations that "[a]s a direct and proximate result of the [district's actions], [plaintiff] was excluded from and deprived of educational benefits" and that "[plaintiff] was excluded from participating in, and was denied the benefits of the program of education at [the school]"). Because Plaintiffs' Amended Complaint seeks relief available under the IDEA for the denial of a FAPE, the claims are subject to exhaustion before the filing of a civil suit. Accordingly, to the extent Plaintiffs seek relief for the denial of a FAPE under Counts 1, 2, and 5, such claims are dismissed for failure to exhaust administrative remedies.

Under Counts 1, 2, and 5, Plaintiffs also plead sufficient facts to allege disability discrimination under the ADA and Rehabilitation Act. The *Fry* Court made clear that "the IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions." *Fry*, 137 S.Ct. at 756. Further, "[t]he same conduct might violate all three statutes." *Id.* The *Fry* Court offered "a pair of hypothetical questions"

10

that could offer a clue as to the type of relief sought by the gravamen of a complaint. *Id.* "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school . . . ?" *Id.* (emphasis in original). "Second, could an *adult* [employee or visitor] at the school have pressed essentially the same grievance?" *Id.* (emphasis in original). If so, the plaintiff likely not does not seek relief for the denial of a FAPE. *Id.*

Plaintiffs allege Defendants discriminated against K.D. by utilizing physical force and restraint and having K.D. arrested in response to K.D.'s episodes of anxiety, PTSD, and negative medicinal reactions instead of abiding by K.D.'s doctor's orders that K.D. be treated as if he were having a seizure and ensuring K.D. would not hurt himself. Plaintiffs claim that Defendants were "deliberately indifferent to the harassment, bullying, and retaliation" that K.D. was experiencing, which caused his medical issues to worsen and caused K.D. to be unable to access a public facility offering federally-funded programs. (Doc. #15, ¶ 51). Hypothetically, an adult employee of SJSD could bring a claim for disability discrimination for acts of physical force improperly or unlawfully used against that employee who had presented SJSD with medical documentation instructing how to properly handle an episode resulting from severe anxiety or an adverse reaction to medicine. Similarly, an adult employee of SJSD could bring a claim against SJSD for its involvement with harassment and retaliation that caused the employee's medical issues to prevent him or her from being able to attend work without an anxiety attack or episode related to PTSD.

Under *Fry*, these hypothetical scenarios suggest that Plaintiffs in this case seek a remedy for alleged disability discrimination, and not simply for the denial of a FAPE. The *Fry* Court notes that a plaintiff is "the master of the claim: She identifies its remedial basis—and is subject to exhaustion or not based on that choice." *Id.* at 755 (internal quotations and citation omitted).

11

At this early stage of the pleadings, the Court cannot properly dismiss Plaintiffs' claims seeking relief for disability discrimination under the ADA and Rehabilitation Act, as such a claim for relief is plausible under *Fry*. Accordingly, to the extent Plaintiffs' claims under Counts 1, 2, and 5 seek relief for discrimination based on disability, and such claims do not concern K.D.'s schooling or ability to obtain a FAPE, Plaintiffs have stated a plausible claim for relief and Defendants' motion to dismiss Counts 1, 2, and 5 for failure to exhaust administrative procedures is denied.

### 2. Individual Liability

Defendants argue Kim Siela cannot be held liable under the ADA and Rehabilitation Act because the Acts apply to public entities and individual employees are not subject to liability. Plaintiffs do not address this argument. "[T]he statutory language of the ADA provides only for 'public entity' liability," thus "preclud[ing] ADA claims against state officials in their individual capacities." *Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001) (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc); 42 U.S.C. §§ 12132, 12131(1). However, the ADA does not prohibit claims against state officers in their official capacities. *Id.* Moreover, "[b]ecause the same basic standards and definitions are used under both [the ADA and Rehabilitiation Act], cases interpreting either are applicable and interchangeable . . . ." *Allison v. Dep't of Corr.*, 94 F.3d 494, 497 (8th Cir. 1996); see also *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 930 (8th Cir. 1994) ("Congress intended Title II to be consistent with section 504 of the Rehabilitation Act. This desire for consistency is evident from the ADA statutory scheme itself. Enforcement remedies, procedures and rights under Title II are the same as under section 504.") (citing 42 U.S.C. § 12133). Accordingly, Count 5 is dismissed

as to Kim Siela and any other individual Defendant against whom Plaintiffs assert Count 5 in their individual capacities.

### 3. Punitive Damages

Defendants argue that Plaintiffs' claims for punitive damages under Counts 1 and 5 for violations of the ADA and Rehabilitation Act should be dismissed because punitive damages are not authorized under the Acts. Plaintiffs did not respond to this argument. "[Punitive damages] may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act." *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Section 202 of the ADA is contained within Title II, which is the title under which Plaintiffs base their claims. The Eighth Circuit and the Western District of Missouri have interpreted *Barnes* to mean that punitive damages may not be awarded under any title of the ADA. See *Meagley v. City of Little Rock*, 639 F.3d 384, 390 (8th Cir. 2011); *Wright v. Missouri*, No. 06-4201-CV-C-NKL, 2008 WL 151368, at *3 (W.D. Mo. Jan. 7, 2008) ("[P]unitive damages are not an available remedy under the ADA") (citing *Barnes*, 536 U.S. at 189). Accordingly, Plaintiffs' claim for punitive damages under Counts 1 and 5 for violations of the ADA and Rehabilitation Act are dismissed.

## B. Sexual Harassment Claim Under Title IX

### 1. Basis for Asserting Claim

Defendants argue Plaintiff K.J., individually, has no basis to assert a claim under Title IX. Plaintiffs declined to offer any response to this argument. Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "On its face, [Title IX] applies only to students and participants in educational programs." *Bosley v. Kearney R-1 Sch. Dist.*, 904

F.Supp. 1006, 1020 (W.D. Mo. 1995) (holding that student's parent could not sue under Title IX). Accordingly, Plaintiff K.J.'s individual claim for sexual harassment under Title IX is dismissed. Plaintiff's claim for sexual harassment under Title IX on behalf of K.D. as Next Friend survives.

### 2. Individual Liability

Defendants argue that Title IX does not authorize a cause of action against school officials in their individual capacities. Plaintiffs declined to respond to this argument. "[Title IX] has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir. 1999) ("Title IX will not support an action against [a school official] in her individual capacity."). Plaintiffs have not made it clear against which Defendants they assert Count 6, the claim for sexual harassment under Title IX. To the extent they intend to bring this claim against Kim Siela, Count 6 is dismissed as to Kim Siela and any other Defendant against whom Plaintiffs assert Count 5 in their individual capacities.

### 3. Punitive Damages

Defendants argue that Plaintiffs' claim for punitive damages under Title IX is not authorized and should be dismissed. In their argument, Defendants concede that neither the U.S. Supreme Court nor the Eighth Circuit have decided this issue. Defendants argue that dismissal of the claim is still appropriate because the Supreme Court "established a framework strongly suggesting that punitive damages are not available under Title IX" in *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Defendants also note that the Fourth Circuit in *Mercer v. Duke Univ.*, 50 F. App'x 643, 644–45 (4th Cir. 2002), held that "the Supreme Court's conclusion in *Barnes* that punitive damages are not available under Title VI compels the conclusion that punitive damages

are not available for private actions brought to enforce Title IX." Plaintiffs argue that because no binding case law holds that punitive damages are unavailable under Title IX, their claim cannot be dismissed.

The Court in *Barnes* held that punitive damages are not available in private actions brought under Title II of the ADA or section 504 of the Rehabilitation Act, largely because the remedies for violations of those Acts were modeled after those of Title VI of the Civil Rights Act of 1964, under which punitive damages are not available. *Barnes*, 536 U.S. at 189. Defendants argue that because "Title IX is also modeled after Title VI and is interpreted and applied in the same manner as Title VI," punitive damages are not available under Title IX. (Doc. #38, p. 10). This Court finds that because neither the Supreme Court nor the Eighth Circuit has explicitly ruled that punitive damages are not available under Title IX, Plaintiffs have stated a plausible claim for punitive damages under Title IX. Accordingly, Defendants' motion to dismiss Plaintiffs' claim for punitive damages under Count 6 is denied.

### 4. Sufficiency of Claim

Defendants argue that Plaintiffs have failed to state a claim under Title IX, because "they do not allege that the [SJSD's] actions caused the harassment or made K.D. more vulnerable to it." (Doc. #29, p. 9) (citing *K.T. v. Culver-Stockton Coll.*, No. 16-3617, 2017 WL 3254396, at *2 (8th Cir. Aug. 1, 2017)). Plaintiffs offer no response to this argument.

"For a school district to incur liability under Title IX [for teacher/principal-student sexual harassment], it must be (1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 274 (1998)). Plaintiffs allege that Otto took K.D. on trips to eat and to the store without K.D.'s parents' knowledge, bought him gifts

without K.D.'s parents' knowledge, rubbed K.D.'s shoulders, and patted and hugged K.D. (Doc. #15, ¶ 38). Plaintiffs allege "K.J. reported the conduct of Mr. Otto to SJSD," and that thereafter, Otto "did not allow [K.D.] back in school after that report was made." (Doc. #15, ¶ 41). Plaintiffs allege in their Amended Complaint that "[u]pon notice of the harassment, [SJSD] failed to take prompt and remedial action to protect [K.D.] from continuing harassment." (Doc. #15, ¶ 139).

The Court finds Plaintiffs have alleged sufficient facts to state a plausible claim for relief under Title IX. Taken as true, the facts alleged by Plaintiffs demonstrate that K.J. gave SJSD notice of the conduct she perceived as inappropriate and sexual in nature, which occurred while K.D. was in the care of Otto at school, and SJSD failed to act on the complaint, which resulted in K.J. not being allowed back in school. Such allegations are sufficient to survive a motion to dismiss. *Bell Atlantic Corp.*, 550 U.S. at 570 (A plaintiff must only allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible."). Accordingly, Defendants' motion to dismiss Plaintiffs' claim for sexual harassment under Title IX for failure to state a claim is denied.

### C. Punitive Damages Under Negligence Claim

Defendants argue SJSD is immune from punitive damages under Counts 3 and 4, Plaintiffs' claims for negligence and vicarious liability, pursuant to RSMo. § 537.610. Plaintiffs do not respond to this argument. Section 537.610.3 states that "[n]o award for damages on any claim against a public entity within the scope of sections 537.600 to 537.650, [which includes tort claims], shall include punitive or exemplary damages." School districts are considered public entities under RSMo. §§ 537.600, *et seq. See, e.g., Boever v. Special Sch. Dist. Of St. Louis Cty.*, 296 S.W.3d 487, 491 (Mo. App. E.D. 2009); *Lackey v. Iberia R-V Sch. Dist.*, 487

16

S.W.3d 57, 59 (Mo. App. S.D. 2016).  Accordingly, Plaintiffs' claims for punitive damages under Counts 3 and 4 are dismissed as to Defendant SJSD.

IV.     Conclusion

Based on the foregoing, Defendants' Joint Motion for Judgment on the Pleadings (Doc. #28) is GRANTED IN PART and DENIED IN PART.  Furthermore, it is hereby

**ORDERED** that Plaintiffs file a second amended complaint clearly identifying (1) which parties Plaintiffs consider to be defendants to this lawsuit and (2) which claims Plaintiffs assert against each party, by 5:00 p.m. on January 23, 2019.  Plaintiffs' second amended complaint must only include the claims the Court has stated may be re-pled.

The Court notes that Plaintiffs' counsel has on multiple occasions during this litigation missed deadlines, submitted inconsistent and error-filled pleadings, and failed to respond to arguments raised in briefing.  The Court informs Plaintiffs' counsel that failure to meet the deadline set by this Order may result in dismissal of this action and/or other sanctions.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

DATE: January 18, 2019